## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **GINA D'AMORE** *et al.*, | |
| Plaintiffs, | |
| v. | Case No. 21-cv-1505 (CRC) |
| **SMALL BUSINESS ADMINISTRATION**, | |
| Defendant. | |

## MEMORANDUM OPINION

Plaintiffs Mid-Atlantic Interpreting Group ("MAIG") and its CEO, Gina D'Amore, sued the Small Business Administration ("SBA") under sections 504 and 508 of the Rehabilitation Act of 1973.[1]  D'Amore, who is deaf, alleged that SBA failed to provide her effective sign language interpretation in connection with two SBA-sponsored programs—an in-person program for small-business leaders (the "Emerging Leaders Program") and two online webinars on COVID-19 related issues.  The Court adjudicated D'Amore's claims in two stages:  It first granted SBA's motion to dismiss the section 508 claim and then, after discovery, granted the agency's motion for summary judgment on the section 504 claim.

Now the parties have moved for reconsideration of both motions.  Because of an intervening clarification of D.C. Circuit law, SBA requests that the Court reconsider its decision to dismiss D'Amore's section 508 claim but, upon revisiting that decision, dismiss the claim for lack of standing.  The Court agrees with SBA as to both steps.  D'Amore likewise moves for reconsideration of the Court's summary judgment ruling.  But, because the Court determines D'Amore also lacked standing to raise her section 504 claim, the Court will vacate its decision

---

[1]  For ease of reading, the Court will refer to Plaintiffs collectively as "D'Amore."

granting the agency summary judgment as to that claim, deny D'Amore's motion for reconsideration as moot, and dismiss D'Amore's entire suit for lack of standing.

## I.    Background

As the Court has already detailed the factual background of D'Amore's claims in its previous opinions, it will not retread old ground.  See D'Amore v. Small Bus. Admin. ("D'Amore I"), No. 21-cv-01505 (CRC), 2021 WL 6753481, at *1–2 (D.D.C. Sept. 16, 2021); D'Amore v. Small Bus. Admin. ("D'Amore II"), No. 21-cv-1505 (CRC), 2023 WL 6215358, at *1–3 (D.D.C. Sept. 25, 2023).  Instead, the Court will describe the parts of its previous opinions, as well as the subsequent events, that form the basis for the parties' motions to reconsider.

In D'Amore I, the Court dismissed D'Amore's section 508 claim because it determined that the provision did "not supply a private cause of action" where, as in this case, the plaintiff did not allege that "the agency [was] acting in any capacity as a federal funding agency."  2021 WL 6753481, at *3; see also id. at *2 ("Section 508 supplies a private cause of action only if an agency is acting in its capacity as a federal *funding* agency.").  At the time of D'Amore I, the D.C. Circuit had not weighed in on the availability of a private cause of action in section 508, but several sister courts in this district had agreed that section 508 confers a private right only when the agency acts in a funding capacity.  See id. at *3.  In Orozco v. Garland, a case decided after D'Amore I, the circuit took a different view.  60 F.4th 684 (D.C. Cir. 2023).  It found that section 508 "extends a private right of action to all persons with disabilities who file administrative complaints requesting accessible technology and who seek only injunctive and declaratory relief," regardless of whether the agency acts in a funding capacity.  Id. at 685.  In light of Orozco, SBA now moves for reconsideration of D'Amore I.  See Def.'s Mot. Recon. [ECF No. 58] at 5.

Meanwhile, in D'Amore II, the Court granted summary judgment to SBA on D'Amore's section 504 claim. The Court determined that SBA had not denied D'Amore "meaningful access" with respect to either of the two SBA-sponsored programs at issue. D'Amore II, 2023 WL 6215358, at *3. Three days after the Court entered judgment, D'Amore moved for reconsideration on the ground that the Court's description of SBA's "policies and procedures" was "inconsistent with the undisputed facts." Pl.'s Opp'n [ECF No. 61] at 2. Both motions are now fully briefed and ripe for review.

## II.   Legal Standards

"Although the Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, courts generally analyze them under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b)." S.E.C. v. Bilzerian, 729 F. Supp. 2d 9, 12 (D.D.C. 2010). Under Federal Rule of Civil Procedure 59(e), a party may move to "alter or amend a judgment no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). A Rule 59(e) motion, however, "is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (cleaned up).

If more than 28 days have passed, a party may also move under Federal Rule of Civil Procedure 60(b) for relief "from a final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). Relief under this rule is available for certain specified reasons, including "mistake, inadvertence, surprise, or excusable neglect"; "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; and "any other reason that justifies relief." Id. A motion under Rule 60(b) must be made "within a reasonable

time," and—for certain grounds for relief—within a year of entry of judgment.  Fed. R. Civ. P. 60(c).  And while "Rule 59(e) motions are disfavored and should only be granted in extraordinary circumstances," the "standards that govern Rule 60(b) motions are even more restrictive."  Bilzerian, 729 F. Supp. 2d at 13.

### III.  Analysis

As described, the parties have moved for reconsideration of the Court's rulings on D'Amore's section 504 and 508 claims.  The Court will start with the section 508 claim, which is the subject of SBA's motion, and then turn to the section 504 challenge.

### A.  Section 508

SBA moves under Rule 60(b) for reconsideration of the Court's decision in D'Amore I. SBA claims relief from final judgment is warranted under Rule 60(b)'s exception for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), which the D.C. Circuit has extended to cases where "the controlling law of the circuit changed between the time of the court's judgment and the Rule 60 motion," Bestor v. F.B.I., 539 F. Supp. 2d 324, 328 (D.D.C. 2008), aff'd, No. 08-5076, 2008 WL 5640702 (D.C. Cir. Dec. 23, 2008); see also Ctr. for Nuclear Resp., Inc. v. U.S. Nuclear Regul. Comm'n, 781 F.2d 935, 940 (D.C. Cir. 1986). D'Amore concurs, and the Court finds both parties are correct.  See Pl.'s Opp'n at 4.  Because the D.C. Circuit issued its ruling in Orozco after D'Amore I, Rule 60(b) is satisfied.

D'Amore, however, still cannot prevail in bringing her section 508 claim because she lacks standing to raise it.  To establish standing, a plaintiff "must show (i) that [she] suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief."  TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021); see also Lujan v. Defs. of

Wildlife, 504 U.S. 555, 561 (1992) ("The party invoking federal jurisdiction bears the burden of establishing these elements."). D'Amore cannot clear the first hurdle as she has not pled a cognizable injury. And though the parties dispute whether her injury was imminent, as opposed to speculative, the Court will train its attention on a different requirement for Article III injury: concreteness. See Def.'s Mot. Recon. at 13; Pl.'s Opp'n at 11.

In the Second Amended Complaint, D'Amore has alleged two different types of injury. First, she claims that she was "deprived [] of access to and use of information comparable to that provided to non-disabled participants." Sec. Am. Compl. ("SAC") ¶ 32. As D'Amore acknowledges, this injury is tied to section 508's standard. She states that "in light of the language of Section 508, the necessary 'injury in fact' is determined by whether Defendant failed to provide Plaintiffs with 'access to and use of information and data that is comparable to the access to and use of the information and data by such members of the public who are not individuals with disabilities.'" Pl.'s Opp'n Mot. Recon. at 7 (quoting 29 U.S.C. § 794d).

This is not a cognizable injury for two reasons. One, the Supreme Court has "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" TransUnion LLC v. Ramirez, 594 U.S. 413, 426 (2021) (quoting Spokeo, Inc. v. Robins, 578 U. S. 330, 341 (2016)). "Article III standing requires a concrete injury even in the context of a statutory violation." Spokeo, 578 U.S. at 341; see also TransUnion LLC, 594 U.S. at 427 ("[U]nder Article III, an injury in law is not an injury in fact. Only those plaintiffs who have been *concretely harmed* by a defendant's statutory violation may sue that private defendant over that violation in federal court."). For a harm to be sufficiently concrete, "the alleged injury to the plaintiff [must bear] a 'close relationship' to a harm 'traditionally' recognized as providing

a basis for a lawsuit in American courts." Id. (quoting Spokeo, 578 U.S. at 341). D'Amore has not met this requirement. She points to no historical analog for the alleged harm of being deprived comparable access to information. Nor is one apparent.

Two, to the extent a statutory cause of action informs Article III standing, D'Amore has not plausibly alleged a violation of section 508. See Spokeo, 578 U.S. at 341 ("[B]ecause Congress is uniquely well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important."); see also Lawyers' Comm. for 9/11 Inquiry, Inc. v. Wray, 848 F. App'x 428, 430 (D.C. Cir. 2021) (per curiam) ("It is well established that when considering whether a plaintiff has Article III standing, a federal court must assume *arguendo* the merits of his or her legal claim. But, [] with any claimed basis for standing, the plaintiff's reading of a statute . . . must at least be plausible." (cleaned up)). Section 508, codified at 29 U.S.C. § 794d, requires an agency, "[w]hen developing, procuring, maintaining, or using electronic and information technology," to ensure that "individuals with disabilities . . . have access to use and of information and data that is comparable to the access to and use of the information and data by such members of the public who are not individuals with disabilities." 29 U.S.C. § 794d(a)(1)(A). The statute does not define what constitutes "comparable" access or use. Instead, it directs the Architectural and Transportation Barriers Compliance Board ("Access Board")—a group composed of members of the public, including individuals with disabilities, and designees from twelve federal agencies—to issue "standards setting forth . . . the technical and functional performance criteria necessary to implement [section 508's] requirements." Id. § 794d(a)(2)(A); see also id. § 792(a)(1) (describing the Access Board).

Under standards promulgated by the Access Board, SBA was not required to provide an ASL interpreter for the COVID-19 webinars.  Recall that the webinars primarily "consisted of narrated PowerPoint presentations."  See D'Amore II, 2023 WL 6215358, at *2.  The Access Board standard that best describes this kind of presentation required only that the agency provide closed captioning—not an interpreter.  The standards state, "Where ICT [information and communication technology] displays or processes video with synchronized audio, ICT shall provide closed caption processing technology. . . ."  36 C.F.R. Pt. 1194, App. C § 413.1; see also id. § 1194.1 (explaining that the "standards for information and communication technology developed, procured, maintained, or used by Federal agencies covered by Section 508 of the Rehabilitation Act are set forth in Appendices A, C and D").  And, as D'Amore does not dispute, SBA complied with this requirement.  See D'Amore II, 2023 WL 6215358, at *6 ("The facts are undisputed that closed captions accompanied the webinars' audio. . . .").  To be sure, the webinars also included "a chat box and a live polling tool."  Id. at *2.  But the Access Board standards do not mandate the use of an interpreter with such functionalities.  Indeed, the parties do not cite to and the Court is not aware of any section of the Access Board standards requiring the use of interpreters.  Thus, to the extent Congress has "elevat[ed]" section 508 violations to the "to the status of legally cognizable injuries," D'Amore has not alleged a plausible violation of the statute.  Spokeo, 578 U.S. at 341.  Her "comparable access and use" injury is therefore not sufficiently concrete to confer standing.

The second injury that D'Amore alleges is that she was "denied the benefit of participating in the [COVID-19 webinars] and the opportunities they provided."  SAC ¶ 19; see also id. ¶ 30 ("SBA has repeatedly denied Ms. D'Amore and MAIG the benefit of participation in its programs."); id. ¶ 32 ("[SBA's] repeated failures to provide reasonable accommodations

deprived Ms. D'Amore . . . the benefit of participating in the SBA programs . . . [and] effectively excluded [her] from participating in such programs.").  As with the first injury, however, she has identified no "intangible harm traditionally recognized as providing a basis for a lawsuit in American courts" that corresponds to this injury.  <u>TransUnion</u>, 594 U.S. at 427; <u>see also</u> <u>Cato Inst. v. Sec. & Exch. Comm'n</u>, 4 F.4th 91, 94 (D.C. Cir. 2021) ("[The plaintiff] bears the burden of establishing standing for each form of relief it seeks.").  Nor, again, is one apparent to the Court.  This injury therefore also does not satisfy the threshold for Article III injury.

Accordingly, D'Amore does not have standing to raise her section 508 claim.

B.  <u>Section 504</u>

For many of the same reasons, D'Amore also lacks standing to raise her section 504 claim.  The parties did not address standing in prior motions, and the Court was therefore not primed to consider it when deciding the parties' cross-motions for summary judgment.  But, upon revisiting that decision, the Court determines D'Amore did not have standing to challenge SBA's conduct under section 504 with respect to either the COVID-19 webinars or the Emerging Leaders Program.  <u>See</u> <u>Summers v. Earth Island Inst.</u>, 555 U.S. 488, 499 (2009) ("[T]he court has an independent obligation to assure that standing exists, regardless of whether it is challenged by any of the parties.").

First, the COVID-19 webinars.  D'Amore's theory of injury with respect to section 504 is identical to the second theory for section 508—namely, that she was deprived "the benefit of participating in the SBA programs" and "effectively excluded [] from participating in" them.  SAC ¶ 32.  Indeed, she alleges this injury in the same sentence of the complaint.  <u>See</u> <u>id.</u>  Accordingly, just as she lacks standing to challenge the denial of an interpreter for the webinars under section 508, so too does she lack standing under section 504.

The Emerging Leaders Program presents a different issue.  Though she does not specifically name this injury in her complaint, the attachments to the complaint suggest—at least in theory—that D'Amore believes she suffered emotional harm from being denied two certified interpreters for the introductory session of the program.  See Conservative Baptist Ass'n of Am., Inc. v. Shinseki, 42 F. Supp. 3d 125, 131 n.2 (D.D.C. 2014) ("In resolving a motion to dismiss for lack of standing, the Court may look beyond the allegations in the complaint.").  In an email she sent to her contact at SBA after the introductory session, she remarked at how "frustrating" it can be "for all parties" to find qualified interpreters.  SAC, Ex. 7 at 2.  And, in a letter she sent to SBA's Ombudsman, she wrote that she "started to lose hope" when her assigned interpreter was late and then was "shocked" when the interpreter, after arriving, told her to "sit down and be quiet and not to disrupt the class."  Id., Ex. 8 at 286 (page number designated by CM/ECF). Even after TransUnion, courts have found that this type of alleged emotional injury can satisfy Article III's concreteness requirement.  See, e.g., Laufer v. Arpan LLC, 29 F.4th 1268, 1274 (11th Cir. 2022), vacated on other grounds, 77 F.4th 1366 (11th Cir. 2023) ("Even if it's clear after TransUnion that a violation of an antidiscrimination law is not alone sufficient to constitute a concrete injury, we think that the emotional injury that results from illegal discrimination is."). In Laufer, for example, the Eleventh Circuit found that a plaintiff had adequately pled a "concrete stigmatic injury" when she alleged that illegal discrimination resulted in feelings of "frustration and humiliation" and a "sense of isolation and segregation."  Id. at 1274.  D'Amore's allegations of emotional injury are less concrete than those in Laufer, but she has, at least plausibly, satisfied the concreteness standard.

The same cannot be said for the "actual and imminent" requirement for Article III injury—particularly because D'Amore seeks only injunctive or declaratory relief. [2]  See TransUnion, 594 U.S. at 423 (Injury in fact must be "concrete, particularized, *and* actual or imminent" (emphasis added)).  When a plaintiff seeks only forward-looking relief, she must "show [that she] is suffering an ongoing injury or faces an immediate threat of injury." Narragansett Indian Tribal Historic Pres. Off. v. FERC, 949 F.3d 8, 13 (D.C. Cir. 2020) (cleaned up); see also Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir. 2015) (When a plaintiff "seeks prospective declaratory and injunctive relief, [s]he must establish an ongoing or future injury that is 'certainly impending'; [s]he may not rest on past injury." (quoting Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409 (2013))).  D'Amore has not met this standard.  She does not allege that she is currently suffering emotional harm, nor does she suggest that such harm (or another cognizable injury) is likely to recur.  She thus lacks standing to challenge the denial of two certified interpreters under section 504.

There is one final injury to consider.  D'Amore also claims SBA "retaliatorily terminat[ed] [her] participation in the programs at issue and [] retaliatorily fail[ed] to timely

_____

[2]  D'Amore's original complaint, as well as First Amended Complaint, did request money damages.  See Compl. [ECF No. 1], Prayer for Relief at 14; First Am. Compl. [ECF No. 11], Prayer for Relief at 15.  But after SBA moved to dismiss her damage claims on the ground that the United States had not waived its sovereign immunity to those claims, the Court granted D'Amore leave to amend her complaint to omit any claim for monetary relief.  See Pl.'s Mot. Leave to File Sec. Am. Compl. [ECF No. 25] ¶¶ 4–6; D'Amore I, 2021 WL 6753481 at *3; see also id. ("Plaintiffs concede that their claims for monetary damages should be dismissed.").  Moreover, D'Amore would not be able to sustain a claim for money damages should she try to bring one.  Money damages are not available under section 505 (the Rehabilitation Act's remedy provision) unless the violation was committed by a "federal funding agenc[y]."  Lane v. Peña, 518 U.S. 187, 193 (1996).  And, as this Court has previously held (and as D'Amore did not dispute), her "allegations concern only the SBA hosting certain programs or events, rather than the agency acting in a funding capacity."  D'Amore I, 2021 WL 6753481, at *3 (citation omitted).

respond to [her] complaints." See SAC ¶ 32.  But, because she seeks only injunctive and declaratory relief, she must show that the risk of retaliation is "certain impending."  Arpaio v. Obama, 797 F.3d at 19 (cleaned up).  She has pled nothing to that effect, so this injury too is not cognizable.

Where does that leave matters?  Because D'Amore lacked standing to raise her section 504 claim, the Court lacked jurisdiction to reach the merits of that claim.  See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.").  Accordingly, the Court must vacate D'Amore II and deny D'Amore's motion for reconsideration of that decision as moot.  Furthermore, because she lacks standing to raise either the section 504 or 508 claim, the Court dismisses her entire suit.

## IV.  Conclusion

A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   July 1, 2024

11